# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASMINE MONIQUE GONZALES,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No.  1:19-cv-01128-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL AND ENTERING JUDGMENT IN FAVOR OF THE COMMISSIONER OF SOCIAL SECURITY<br><br>(ECF Nos. 17, 18, 19) |

## I.

## INTRODUCTION

Plaintiff Jasmine Monique Gonzales ("Plaintiff") through her guardian ad litem, Paul Gonzales, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") finding she no longer qualifies for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from Attention Deficit Hyperactivity Disorder ("ADHD").  For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, a minor, was found to be disabled in a determination dated December 10, 2010. On May 4, 2015, it was determined that Plaintiff was no longer disabled as of April 1, 2015.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 6, 8.)

(AR 83-88.)  The determination was upheld upon reconsideration following a disability hearing before the state hearing officer.  (AR 142-144.)  Plaintiff filed a request for a hearing before Administrative Law Judge Ruxana Meyer ("the ALJ").  Plaintiff's father waived the right to appear and testify at the hearing.  (AR 231.)  On September 6, 2018, the ALJ found that Plaintiff was not disabled.  (AR 19-40.)  The Appeals Council denied Plaintiff's request for review on April 24, 2019.  (AR 8-10.)

## A.  Hearing Testimony

Plaintiff and her father, Mr. Gonzales, appeared for hearing on November 13, 2017.  (AR 60-78.)  Mr. Gonzales did not want to waive his right to representation so the hearing was postponed for Plaintiff to obtain counsel.  (AR 69, 180.)

Plaintiff's attorney appeared, but neither Plaintiff nor Mr. Gonzales appeared, for the hearing set on February 14, 2018.  (50-59.)  At the hearing, the ALJ noted that there was a document stating that Mr. Gonzales had knee surgery the day prior to the hearing.  (AR 53.)  When asked, Plaintiff's attorney stated that Plaintiff was not waiving her right to appear at the hearing.  (AR 53.)  He argued that good cause existed as to why they missed the hearing and he was willing to move forward with any expert testimony that was available.  (AR 53.)  The ALJ stated that knee surgery is generally an outpatient procedure so she was not sure that good cause had been shown for the failure to appear.  (AR 53.)  The ALJ also stated that there was no medical expert present.  (AR 53.)  Counsel requested that Mr. Gonzales's testimony be presented in a document fashion and the ALJ agreed.  (AR 54.)  A waiver of appearance for the hearing was executed.  (AR 231.)

## B.  ALJ Findings

The ALJ made the following findings of fact and conclusions of law.

- The most recent favorable medical decision finding that Plaintiff was disabled is the determination dated December 17, 2010.  This is known as the "comparison point decision" or CPD.

- At the time of the CPD, Plaintiff had the following medically determinable impairment: ADHD.  This impairment was found to meet section(s) 112.11 of 20

1      CFR Part 404, Subpart P, Appendix 1.

2      •    Medical improvement occurred as of April 1, 2015.

3      •    Since April 1, 2015, the impairment that Plaintiff had at the time of the CPD has not met or medically equaled the listing.

5      •    Plaintiff was born on March 29, 2004.  Therefore, she was a school-age child, as of April 1, 2015.  Plaintiff is currently an adolescent.

7      •    Since April 1, 2015, the impairment that Plaintiff had at the time of the CPD has not functionally equaled the Listings of Impairments.

         ○    Since April 1, 2015, Plaintiff has had no limitation in acquiring and using information as a result of the impairment present at the CPD.

         ○    Since April 1, 2015, Plaintiff has had less than marked limitation in attending and completing tasks as a result of the impairment present at the CPD.

         ○    Since April 1, 2015, Plaintiff has had less than marked limitation in interacting and relating with others as a result of the impairment present at the CPD.

         ○    Since April 1, 2015, Plaintiff has had no limitation in moving about and manipulating objects as a result of the impairment present at the CPD.

         ○    Since April 1, 2015, Plaintiff has had no limitation in the ability to care for herself as a result of the impairment present at the CPD.

         ○    Since April 1, 2015, Plaintiff has had no limitation in health and physical well-being as a result of the impairment present at the CPD.

      •    The medical and other evidence establish that Plaintiff: did not have an impairment at the CPD that was not considered at that time; and has not developed any additional impairments subsequent to the CPD.

      •    Since April 1, 2015, Plaintiff has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments.

      •    Since April 1, 2015, Plaintiff has not had an impairment or combination of

impairments that functionally equals the listings.

- Plaintiff's disability ended as of April 1, 2015, and the claimant has not become disabled again since that date.

(AR 25-40.)

### III.

### LEGAL STANDARD

To be eligible for disabled child's insurance benefits, the claimant must meet the Social Security Act's definition of "child," be unmarried, be below specified age limits (18 or 19) or be under a disability which began prior to age 22, and was dependent on the insured at the time of the insured's death. Astrue v. Capato ex rel. B.N.C., 566 U.S. 541, 547 (2012) (quoting 42 U.S.C. § 402(d)(1), see also Smolen v. Chater, 80 F.3d 1273, 1279–80 (9th Cir. 1996) (quoting 42 U.S.C. § 402(d)(1)(B)(ii)) ("To be eligible for disabled child's insurance benefits, the claimant must, 'at the time [her] application is filed,' be 'under a disability . . . which began before [s]he attained the age of 22.' "). A child is disabled for the purposes of the Social Security Act if she suffers from "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Merrill ex rel. Merrill v. Apfel, 224 F.3d 1083, 1085 (9th Cir. 2000) (quoting 42 U.S.C. § 1382c(a)(3)(C)(i)).

The Social Security regulations establish a three-step sequential evaluation process to be followed in a child disability case. 20 C.F.R. § 416.924. At the First Step, the Commissioner must determine whether the claimant is working and whether the work is substantial gainful activity; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 416.924(b). At the Second Step, where the claimant is been found not to be engaged in substantial gainful activity, the Commissioner must determine whether the claimant has a severe medically determinable impairment or combination of impairments; if not, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 416.924(c). If a severe impairment is found, the Commissioner continues to the Third Step, in which the Commissioner must

determine whether the claimant's impairment meets or medically or functionally equals an impairment in the Listing of Impairments ("the Listing").  20 C.F.R. § 416.924(d).  If the impairment meets or equals an impairment in the Listing, it is presumed to cause "marked and severe functional limitations," provided it also meets the duration requirement, and benefits are awarded.  20 C.F.R. § 416.924(d).

"The claimant's impairment will medically equal a listed impairment 'if the medical findings are at least equal in severity and duration to the listed findings.' "  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (quoting Interim Final Rules, 62 Fed. Reg. at 6424; 20 C.F.R. § 416.926(a)(1997).)  "The impairment will be considered functionally equivalent if the claimant has marked limitation in two areas or extreme limitation in one area.  Howard, 341 F.3d at 1022 (quoting Interim Final Rules, 62 Fed. Reg. at 6425, 20 C.F.R. § 416.926a(b)(2)(1997)).  Functional equivalence is considered the areas of "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being."  20 C.F.R. § 416.926a(b)(1).  When the claimant's impairment does not meet or equal an impairment in the Listing, or does not meet the durational requirement, the claimant is determined to be not disabled.  20 C.F.R. § 416.924(d).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a scintilla, but less than a preponderance.  Smolen, 80 F.3d at 1279 (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

1    "[A] reviewing court must consider the entire record as a whole and may not affirm

2    simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting

3    Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not

4    this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

5    for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

6    susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

7    upheld.").

8                                          **IV.**

9                          **DISCUSSION AND ANALYSIS**

10        **A.       Arguments of the Parties**

11        Plaintiff argues that the ALJ erred by rejecting the opinion of Dr. Portnoff, a consultative

12   examiner, in favor of the non-examining sources who only reviewed the records.  Plaintiff

13   contends that the ALJ erred by rejecting Dr. Portnoff's opinion because it was formed after a

14   single assessment where Plaintiff's father relayed information and by finding that Dr. Portnoff's

15   opinion that her full scale IQ score was deflated due to Plaintiff's ADHD symptoms was not

16   inconsistent with her performance and school grades.  Plaintiff argues that the ALJ erred by

17   relying on evidence that Plaintiff was performing well in school and disregarding findings that

18   support disability.  Plaintiff also contends that the ALJ erred by failing to comply with the

19   regulations in weighing third party opinions.  Specifically, Plaintiff argues that the ALJ failed to

20   provide an explanation for Ms. Chanterie's opinions about Plaintiff's ability to attend and

21   complete tasks and interact and relate to others.  Plaintiff also contends that the ALJ failed to

22   consider the various function reports, written narratives and statements to medical providers by

23   Mr. Gonzales.

24        Defendant counters that the ALJ properly weighed the opinion of Dr. Portnoff in

25   addressing that it was based on a one-time examination and the statements of Mr. Gonzales.

26   Defendant argues that the ALJ did not reject Dr. Portnoff's entire opinion but assigned little

27   weight to the opinion regarding Plaintiff's ability to socially integrate with peers and adult

28   because it was not consistent with the medical and school records.  Defendant contends that the

ALJ provided specific citations to the record to support her reasoning that Dr. Portnoff's opinion was inconsistent with the medical recording demonstrating medical improvement as of April 1, 2015.  The ALJ noted that on examination, Dr. Portnoff found Plaintiff's thought process to be coherent and organized, her receptive language comprehension was intact, she had some mild tension and impatience, but her immediate and delayed recall was intact and she achieved a full scale IQ of 80 and opined that she had no limitations in her ability to communicate, understand, initiate and use language at an age-appropriate level.

Defendant also argues that the ALJ properly evaluated the testimony of Ms. Chanterie by summarizing her statements and providing great weight to the educational records and teacher opinions and observations.  Defendant contends that the ALJ used Ms. Chanterie's statements to support her findings in each of the six childhood functional domains.  Defendant states that the ALJ provided multiple germane reasons to reject the testimony of Mr. Gonzales finding them to be inconsistent with the observations of Plaintiff's teachers, her documented attendance record, and the overall record citing that Mr. Gonzales stated Plaintiff was engaged in weekly therapy when she was not, and that she had been suspended from school when there was no evidence of any suspensions in the record.

Plaintiff replies that Defendant does not rely on the rationale set forth by the ALJ and the reasons provided by the ALJ to reject the opinion of Dr. Portnoff are not specific and legitimate. Plaintiff argues that Ms. Chanterie's opinions support a finding of more severe limitations than found by the ALJ in the domain of attending and completing tasks.  Plaintiff contends that the cursory rejection of Mr. Gonzales's testimony is legally insufficient.

### B.     Termination of Benefits

The Social Security regulations provide that if a severe impairment does not meet or medically equal any listing, they "will decide whether it results in limitations that functionally equal the listings." 20 C.F.R. § 416.926a(a).  A severe impairment functionally equals a listing if it results in "marked" limitations in two domains of functioning or in an "extreme" limitation in one domain.  Id.  The domains used are "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating

objects; (v) Caring for yourself; and, (vi) Health and physical well-being."   20 C.F.R. § 416.926a(b)(1).

> We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities.   Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities.   "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."   It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2)(i).   A child of any age will be found to "have a 'marked' limitation when [they] have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and [their] day-to-day functioning in domain-related activities is consistent with that score."   20 C.F.R. § 416.926a(e)(2)(iii).   However, they do not rely on test scores alone and no single piece of information taken in isolation can establish whether the child has a "marked" limitation in a domain.   20 C.F.R. § 416.926a(e)(4)(i).

Here, Plaintiff had previously been found to qualify for benefits in 2010.   This appeal is based upon the finding that due to medical improvement, Plaintiff was no longer disabled.

## C.   Relevant Portions of ALJ's Opinion

In this instance, the ALJ found that the medical evidence supports a finding that as of April 1, 2015, there had been a decrease in the severity of the impairment present at the time of the CPD.   (AR 25.)   On June 6, 2014, Ms. Dorado, Plaintiff's fourth grade teacher, reported that Plaintiff was very attentive, liked to please her teacher, and her grades were great.   (AR 25, 381.)   Plaintiff was a good multitasker and was only noticeably excitable when she was not on her medications.   (AR 25, 381.)   Ms. Dorado identified no specific areas of weakness.   (AR 25, 381.)   Plaintiff did not require an Individual Education Plan ("IEP") but had Section 504 accommodations, including preferential seating, buddy pair up, graphic organizers and visuals, note taking, repetition, and small group instruction.   (AR 26, 382.)   Plaintiff was staying for the after school program and was accountable for following school rules.   (AR 26, 382.)

The record states,

Jasmine's academics have been excellent.  She is currently earning straight A's.  She loves to write and likes to do extra credit in the classroom.  Her teacher notes that on the very few days when she is not taking her medication, she gets easily excitable; however, Mrs. Dorado simply has to redirect Jasmine to do her work to get her focused again.

(AR 384.)

The ALJ also considered the testimony of Ms. Chanterie, Plaintiff's fifth grade teacher. (AR 26.) Ms. Chanterie reported that Plaintiff read books at recess.  (AR 26, 322.)  There had been four incidents where Plaintiff had to be sent out of the classroom and Plaintiff could get very loud and disruptive when she was not on her medication.  (AR 26, 322.)  Most of the kids stayed away from Plaintiff when she was not on her medication because she was bothersome and they did not like it.  (AR 26, 322.)  For the most part, Plaintiff was never a problem.  (AR 26, 322.)

The ALJ also considered the June 10, 2016, 504 Accommodation Plan which included Plaintiff's parents, her teacher, and the vice principal.  (AR 26, 368-371.)  The Plan noted that Plaintiff's academics were in good standing and that overall she was a good student.  (AR 26, 368, 371.)  Plaintiff liked reading and writing, worked well independently and was helpful in the classroom.  (AR 26, 368, 371.)  Her teacher reported that Plaintiff was often cheerful and in a good mood.  (AR 26, 368, 371.)  The teacher noted that it was evident when Plaintiff did not take her medications because her behaviors were different and unpredictable.  (AR 26, 371.)  This had occurred two or three times per school year.  (AR 26, 371.)  Plaintiff had no suspensions and three absences.  (AR 26, 368, 371.)  She had no suspensions during the 2017-2018 school year. (AR 26, 537.)

The ALJ also considered that on March 15, 2017, school personnel noted that Plaintiff was having outbursts in class and had gone to the nurse's office to cool down and talk.  (AR 26, 450.)  Plaintiff reported that she was out of her medications.  (AR 26, 450.)  The school nurse was informed by Plaintiff's physician's office that the last refill on Plaintiff's medication had been a thirty day supply prescribed on February 6, 2017.  (AR 26, 450.)  When Mr. Gonzales was contacted he stated, "Don't let her play you, she took her medication this morning."  (AR 26, 450.)  When he was informed of the information provided by the doctor's office, he said he

was trying to get a ride to the doctor.  (AR 26, 450.)

The ALJ went on to consider the degree of limitation in each of the six functional domains for the period since April 1, 2015.  (AR 27-39.)  The ALJ considered the function report, dated November 5, 2014, completed by Mr. Gonzales.  (AR 27, 277-286.)  He reported that Plaintiff's impairments affected her behavior with other people, but indicated that she had friends, made new friends, generally got along well with him and other adults, generally got along with school teachers, and plays team sports.  (AR 27, 283.)  He reported that her impairments affect her ability to help herself and cooperate with others in taking care of her needs as she does not pick up and put away her toys, hang up her clothes, or help around the house.  (AR 27, 284.)

In a questionnaire dated November 24, 2014, Mr. Gonzales reported that he did not know if Plaintiff was in special education.  (AR 28, 288.)  She received special counseling or tutoring in school where she talked to the teachers one on one, but not outside of school.  (AR 28, 288.)  Plaintiff was taking medication for her ADHD that was prescribed by Dr. Naz and had no side effects.  (AR 28, 292.)  He reported that the medication let her pay attention and be able to understand the tasks at hand and that they were allowing her to become a better person in her life.  (AR 28, 292.)

On February 23, 2016, Mr. Gonzales reported that Plaintiff was in the special education program and receives accommodations for whatever she needs, but that every year was different.  (AR 28, 328.)  She did not receive any special counseling or tutoring in school, but outside of school she had been seeing a counselor one time a week for two months.  (AR 28, 328.)  He reported that Plaintiff had been seen by Madera Mental Health in 2009 and was put on medication at the age of five.  (AR 28, 329.)  He reported Plaintiff is seen by Madera Mental Health weekly and they say she has ADHD.  (AR 28, 329.)  He stated that Plaintiff receives discipline therapy; that she was enrolled in Monroe's afterschool program but was "kicked out" due to her medication running out and the program did not have staff equipped to handle kids with ADHD.  (AR 28, 330, 332.)  He reported that her medication is a gift that lets her focus on her schoolwork and the teachers agree, but the medications run out early and only last about

1    ninety minutes.  (AR 28, 332.)

2         In an undated letter submitted in February 2016, Mr. Gonzales reported that Plaintiff had
3    been placed on medication by Madera County Mental Health at the age of five.  (AR 28, 323.)
4    She was taking 70 milligrams of Vyvanse and she sees Dr. Naz, but he only sees her for about
5    fifteen minutes per month.  (AR 28, 323.)  He stated that he feels Dr. Naz does not know
6    anything about his daughter.  (AR 28, 323.)  Plaintiff has ADHD and will never be cured and
7    will always need help.  (AR 28, 323.)  He reported that Plaintiff was receiving mental health
8    counseling and he was glad because he was not able to handle some of the things that Plaintiff
9    does.  (AR 28, 323.)  He stated he also needed counseling and that Plaintiff breaks things in the
10   house, breaks doors and kicks the walls in her room, fights with her brothers and sisters, kicks
11   her brother in the testicles, and he is afraid she is going to hurt one of the other children.  (AR 28,
12   323-324.)  He reported that her future all depended on what she learned in mental health
13   treatment.  (AR 28, 325.)

14        The ALJ considered that on March 30, 2016, Mr. Gonzales reported that Plaintiff was
15   receiving treatment for emotional or learning problems.  (AR 28, 345.)  She was being treated by
16   Dr. Naz for ADHD with medications.  (AR 28, 346.)  There had been no change in her activities
17   due to her physical or mental conditions.  (AR 28, 345, 350.)

18        The ALJ considered the opinion of Dr. Portnoff who conducted a consultative psychiatric
19   examination of Plaintiff on May 12, 2018.  (AR 29-30, 1085-1090.)  Dr. Portnoff noted that he
20   had no records for review and that Mr. Gonzales provided all the history and information he
21   considered, including that Plaintiff was hyperactive, impulsive, distractible, defiant, aggressive,
22   and that she has pushed teachers and broken a school computer.  (AR 29, 1085.)  Her father
23   reported that she was depressed with low self-esteem, has said she wants to die, has social
24   anxiety, and had daily rages that last three hours or more.  (AR 29, 1085.)  He reported that
25   Plaintiff was taking 30 milligrams of dextroamphetamine and 25 milligrams of Strattera, that she
26   was independent with her grooming, can fix herself something to eat, and that when she is home
27   she watches television or is on her cell phone.  (AR 29, 1085-1086.)

28        On examination, Dr. Portnoff found that Plaintiff had mild psychomotor distractibility.

(AR 29, 1086.)  Plaintiff's speech was prompt and spontaneous.  (AR 29, 1086.)  Her thought process was coherent and organized.  (AR 29, 1086.)  Her receptive language comprehension was intact.  (AR 29, 1086.)  Her mood and affect were characterized by mild tension and impatience.  (AR 29, 1086.)  Plaintiff's immediate and delayed recall for two words was intact.  (AR 29, 1086.)  She could not count backwards from ten to one.  (AR 29, 1086.)  On the Wechsler Intelligence Scale for Children-Fifth Edition, she achieved a full scale IQ of 80, placing her in the marginally impaired category (AR 29, 1087.)

Dr. Portnoff's diagnostic impression was disruptive mood dysregulation disorder; attention deficit hyperactivity disorder combined; and unspecified learning disorder.  (AR 29, 1089.)  He noted that Plaintiff had a history of ADHD and also has a reported history of violent rages, separation anxiety, morbid statements, consistent with childhood mood disorder.  (AR 29, 1089.)  Her current cognitive testing was indicative of average visual intelligence that argues against primary sub average intelligence.  (AR 29, .)  Dr. Portnoff noted that ADHD as suggested by the deficient WMI is deflating Plaintiff's full-scale IQ.  (AR 29-30, 1089.)  He noted that Plaintiff has mild deficiencies in verbal and fluid reasoning, which suggests unspecified learning disorder. (AR 29, 1089.)  He noted the progress for ADHD-disruptive mood dysregulation disorder is fair, dependent on access and response to appropriate psychotropic medication.  (AR 29, 1089.)  Dr. Portnoff opined that Plaintiff has mild impairment in her ability and understanding when responding to increasingly complex requests, instructions, and tasks in an age-appropriate manner.  (AR 29, 1089.)  She has no limitations in her ability to communicate, understand, initiate and use language at an age-appropriate level.  (AR 29, 1089.)  Plaintiff has no limitation in her ability to engage in age-appropriate physical activities.  (AR 29, 1089.)  In her social development, she has marked limitations in her ability to socially integrate with peers and adults in an age-appropriate manner due to ADHD and Disruptive Mood Dysregulation Disorder.  (AR 29, 1090.)  She is able to respond to general stimuli in an age-appropriate manner.  (AR 29, 1090.)  She has a moderate to marked impairment in her ability to cooperate, behave, and participate in a group due to ADHD.  (AR 29, 1090.)  She has mild limitations in her ability to engage in a sustained or focus activity for a period of time.  (AR 29, 1090.)

1       The ALJ also considered the opinions of the state agency physician, Dr. Balson who

2   reviewed the record and determined that Plaintiff was receiving medication from her primary

3   care provider for her ADHD, has exhibited no high risk behavior, and has achieved significant

4   medical improvement as long as the parents will maintain adherence to medications as

5   prescribed by her physician.  (AR 30, 698.)

6       The ALJ also considered the opinion of Dr. Haroun who reviewed the record on

7   reconsideration and noted that the medical and education evidence shows that Plaintiff does well

8   when she is compliant with medication, does not have any cognitive problems, and does not

9   require special education.  (AR 30, 737.)  Dr. Haroun opined that Plaintiff's mental impairment

10  is non-severe.  (AR 30, 737.)

11      The ALJ's further discussion of the evidence in each of the functional areas will be

12  addressed as need in addressing the issues raised in this appeal.

13  **C.      Physician Opinion**

14      Plaintiff argues that the ALJ erred in giving greater weight to the opinions of the agency

15  physicians who had only reviewed the record than to the opinion of Dr. Portnoff who had done a

16  consultative examination of Plaintiff.

17      The weight to be given to medical opinions depends upon whether the opinion is

18  proffered by a treating, examining, or non-examining professional.  See Lester v. Chater, 81 F.3d

19  821, 830-831 (9th Cir. 1995).  "Generally, the opinions of examining physicians are afforded

20  more weight than those of non-examining physicians, and the opinions of examining non-

21  treating physicians are afforded less weight than those of treating physicians.  Orn v. Astrue, 495

22  F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)-(2)).  "If a treating or

23  examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject

24  it by providing specific and legitimate reasons that are supported by substantial evidence."

25  Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)(3)).  The

26  contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific,

27  legitimate reason for rejecting a treating or examining physician's opinion, however, "it may

28  constitute substantial evidence when it is consistent with other independent evidence in the

1  record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ need not accept
2  the opinion of any physician that is brief, conclusory, and unsupported by clinical findings.
3  Thomas, 278 F.3d at 957.

4      Dr. Portnoff's opinion conflicts with the opinions of Drs. Balson and Haroun, so the ALJ
5  must provide specific and legitimate reasons to reject Dr. Portnoff's opinion.

6      The ALJ gave little weight to Dr. Portnoff's opinion as it related to marked limitations in
7  Plaintiff's ability to socially integrate with her peers and adults in an age appropriate manner.
8  (AR 30.) The ALJ found that Dr. Portnoff did not review the education or medical records but
9  formed his opinion after one examination during which Plaintiff's father provided her history
10  and related information. (AR 30.) Plaintiff argues that the ALJ erred by rejecting Dr. Portnoff's
11  opinion because he did not review the medical records and it was a one time evaluation. But the
12  ALJ rejected the opinion because it was based on Mr. Gonzales relating her history and related
13  information. An ALJ can reject a physician's opinion that is premised on a claimant's subjective
14  complaints that have been properly discounted. Fair v. Bowen, 885 F.2d 597, 605 (1989).[2]

15      Here, Dr. Portnoff's opinion was based on Mr. Gonzales's representation that Plaintiff
16  was hyperactive, impulsive, distractible, defiant, aggressive, and that she has pushed teachers
17  and broken a school computer. (AR 29, 1085.) But the ALJ noted that the educational records
18  do not corroborate such claims. (AR 29.) Her father also reported that she was depressed with
19  low self-esteem, has said she wants to die, has social anxiety, and had daily rages that last three
20  hours or more. (AR 29, 1085.) The ALJ noted that neither the educational records nor the
21  medical records contain complaints of three hour rages. (AR 29.)

22      Substantial evidence in the record supports the ALJ's findings that the allegations of
23  Plaintiff's conduct set forth by her father are unsupported by the record. As the ALJ addressed
24  in discussing the opinions of Plaintiff's teachers, her fourth grade teacher reported she liked to
25  please her teacher, was very attentive and was only excitable when she was not on her
26  medications. (AR 381.) Ms. Dorado stated she simply has to redirect Plaintiff to do her work to

27
28  [2] As will be discussed below, the Court finds that the ALJ provided germane reasons to find the testimony of Mr. Gonzales not credible.

1    get her refocused again.  (AR 384.)

2         Ms. Chanterie, Plaintiff's fifth grade teacher, identified four incidents where Plaintiff had

3    to be sent out of the room because she was loud and disruptive when she was not on her

4    medication.  (AR 322.)  For the most part, Plaintiff was not a problem.  (AR 322.) Ms. Chanterie

5    stated that Plaintiff "was an absolute pleasure to have in class."  (AR 322.)

6         The 504 Accommodation Plan from June 10, 2016 noted that Plaintiff was very helpful in

7    the classroom, was often cheerful and in a good mood.  (AR 371.)  It was evident when Plaintiff

8    did not take her medications, as had occurred two or three times per school year, because her

9    behaviors were different and unpredictable.  (AR 371.)

10        Review of the medical records also shows no complaints of such rages.  In fact as the

11   ALJ noted, the medical record indicates that Plaintiff was reported to be doing good and was

12   doing well at her school studies and behavior.  (AR 32, 39, 814.)  Plaintiff points to no evidence

13   of such rages in the record.

14        There are a few incidents in the medical record where the family reported issues with

15   Plaintiff.  On February 2, 2015, Plaintiff's medication was increased at the request of her father.

16   (AR 663.)  On May 5, 2015, Plaintiff's father requested a referral to mental health because she

17   was aggressive and throwing knives (although the record on that date also notes that she is doing

18   well at her school studies and behavior).  (AR 817.)  On October 9, 2015, Plaintiff's father

19   requested a referral to mental health; and on November 16, 2015, he reported that Plaintiff's

20   medication was not working and Plaintiff was placed on a new medication.  (AR 798-799, 801.)

21   On November 15, 2016, Plaintiff was reported not to be doing well with her school studies and

22   behavior.  (AR 768.)  On December 24, 2016, it was reported that her medication was not

23   working but she was doing well at school studies and behavior.  (AR 752.)

24        But, as the ALJ found, Plaintiff was generally reported to be doing good and doing well

25   on her school studies and behavior.  (AR 662, 665, 667, 669, 671, 673, 675, 677, 679, 682, 711,

26   712, 742, 745, 749, 768, 770, 773, 783, 786, 789, 792, 805, 808, 814, 815, 817, 958.)

27        The ALJ also noted that Dr. Portnoff found that Plaintiff's full scale IQ was deflated due

28   to her ADHD and the educational records show that the testing was not consistent with her

1   school achievements and grades and that she only had intermittent behavioral issues associated

2   with not taking her medication.  (AR 30.)  The ALJ noted substantial evidence in the record to

3   support the finding that Plaintiff's behavioral issues were intermittent and associated with not

4   taking her medication.  The ALJ considered that Mr. Dorado reported that Plaintiff was only

5   noticeably excitable when she was not on her medication. (AR 25, 381.)  While she is easily

6   excitable when not on her medication, Ms. Dorado simply has to redirect her to do her work to

7   get Plaintiff focused again.  (AR 384.)  Ms. Chanterie reported that there had been four incidents

8   when Plaintiff had to be sent out of the classroom.  (AR 26, 322.)  Plaintiff would get very loud

9   and disruptive when she was not on her medication, but for the most part she was never a

10  problem.  (AR 26, 322.)  In the June 10, 2016, Accommodation Plan it was reported that it was

11  evident when Plaintiff did not take her medication because her behaviors were different and

12  unpredictable.  (AR 26, 371.)  This occurred two or three times per year.  (AR 26, 371.)

13          Plaintiff argues that the ALJ erred by ignoring the opinion of MSW Crystal whose notes

14  included that Plaintiff had a history of neglect and abandonment and is exhibiting poor grades.

15  But the ALJ did consider the opinion of MSW Crystal.  The ALJ noted that despite her father's

16  assertion that Plaintiff was participating in mental health treatment weekly, Plaintiff only

17  received two mental health evaluations that were a year apart and both times Plaintiff was

18  discharged for failing to attend treatment or respond to letters.  (AR 29.)  The ALJ also addressed

19  the mental health examinations in discussing the domains.  (AR 34-39.)  While Plaintiff argues

20  that the providers made findings that Plaintiff had a history of neglect and abandonment and is

21  exhibiting poor grades, the report of Plaintiff's poor grades were by Mr. Gonzales and the ALJ

22  discussed throughout the opinion that the assertion was unsupported by the educational record.

23  Plaintiff points to no evidence in the record that she was receiving poor grades.

24          Citing to a teacher questionnaire completed by Ms. Chanterie on June 4, 2015, Plaintiff

25  also argues that Ms. Chanterie reported that Plaintiff had serious problem completing class work

26  and assignments and an obvious problem working with others without being distracted.  (AR

27  314-321.)  In the area of attending and completing tasks, Ms. Chanterie found that Plaintiff had

28  no problem paying attention when spoken to directly; sustaining attention during sports/play

activity; carrying out single or multi-step instructions; waiting to take turns; completing work accurately without careless mistakes; and working at a reasonable pace/finishing on time.  (AR 316.)  She had a slight problem in focusing long enough to finish assigned task or activity; refocusing to task when necessary; and changing form one activity to another without being disruptive (daily).  (AR 316.)  Plaintiff had an obvious problem organizing own things or school materials (daily); and working without distracting others (monthly).  (AR 361.)  She had a serious problem completing class or homework assignments (daily).  (AR 316.)  Ms. Chanterie stated that when Plaintiff is not on her medication she can be very disruptive and lately she has been very tired with no motivation to complete classwork or homework.  (AR 316.)

The ALJ did consider Ms. Chanterie's testimony regarding Plaintiff's limitations.  She considered the letter written by Ms. Chanterie the next day on June 5, 2015 which states:

> Jasmine has done very well in my classroom.  She is a very pleasant student who is always willing to lend a helping hand.  She is very bright and when she tries, she receives very high grades.  At the beginning of the year her grades were much higher than they currently are and her attitude has somewhat seemed to change as well.  Recently, I have seen Jasmine more quiet and not as willing to complete her work.
>
> However, there were a few days this year when Jasmine was not so willing and cooperative.  There were four times this year when Jasmine had an episode in which I needed to send her out of the classroom.  She can get very loud and disruptive when she is not on her medication, but for the most part, she was never a problem.
>
> Jasmine does very well independently, and often times prefers to work alone.  She enjoys reading and when walking out to recess and lunch, I would catch her with a book in her hand.  She has a consistent group of friends, but I noticed that most of the kids stay away from her because when she is not on medication, she is very bothersome to them and they do not like that.
>
> I cannot say that I have had many problems with Jasmine this year, because l haven't. She was an absolute pleasure to have in class.

(ECF No. 322.)  The ALJ also incorporated the June 4, 2015 report in the discussion of the domains.  (AR 32-34.)  The ALJ's discussion of the June 4, 2015 Teacher Questionnaire in addressing each of the domains will be addressed below.

Plaintiff argues that this is evidence that Plaintiff was receiving poor grades, but the fact that Plaintiff's grades were lower than they were at the beginning of the year does not support that Plaintiff had poor grades, especially given the evidence in the record that Plaintiff was

17

1    receiving good grades and doing well in her classes.  Further, while Plaintiff argues that there is

2    evidence that would support a finding of disability, "the key question is not whether there is

3    substantial evidence that could support a finding of disability, but whether there is substantial

4    evidence to support the Commissioner's actual finding that claimant is not disabled."  Jamerson

5    v. Chater, 112 F.3d 1064, 1067 (9th Cir. 1997).

6         While Plaintiff argues for a different interpretation of the evidence in the record, the ALJ

7    reasonably found that Plaintiff's educational records contradicted Dr. Portnoff's opinion that she

8    had marked limitations in her ability to socially integrate with peers and adults in an age

9    appropriate manner and properly rejected the testimony because it was based on Mr. Gonzales'

10   symptom testimony that was not credible.  Finally, to the extent that Plaintiff is arguing that

11   Plaintiff's limitations made her unable to complete her school work, Dr. Portnoff found that

12   Plaintiff only had mild impairment in her ability to understand and respond to increasing

13   complex requests, instructions, and tests in an appropriate manner; and her ability to engage in a

14   sustained or focused activity for a period of time.  (AR 1089-1090.)

15        The ALJ provided specific and legitimate reasons to reject the marked limitation opined

16   by Dr. Portnoff.  To the extent that opinion could be construed as rejecting the opinion because it

17   was based on a one time examination, any such error would be harmless given that the ALJ

18   provided a specific and legitimate reason for the weight provided to the opinion.  Burch, 400

19   F.3d at 679; Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).

20        **D.**     **Third Party Testimony**

21        Plaintiff contends that the ALJ erred in considering the testimony of the lay witnesses.

22   "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony

23   concerning a claimant's ability to work."  Stout v. Commissioner, Social Sec. Admin., 454 F.3d

24   1050, 1053 (9th Cir. 2006); 20 C.F.R. § 404.1513(b)(4).  "Lay witness testimony is competent

25   evidence and cannot be disregarded without comment."  Bruce v. Astrue, 557 F.3d 1113, 1115

26   (9th Cir. 2009) (quoting Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)).  The ALJ must

27   give specific reasons germane to the witness in discounting the lay witness testimony.  Stout, 454

28   F.3d at 1056.  ).  If the ALJ gives reasons for rejecting the claimant's testimony that are equally

1  relevant to similar testimony provided by lay witnesses, that would support a finding that the lay

2  witness testimony is similarly not credible.  Molina, 674 F.3d at 1114.

3         1.     Ms. Chanterie

4         Plaintiff argues that the ALJ erred by failing to provide an explanation for rejecting Ms.

5  Chanterie's opinions about Plaintiff's ability to attend and complete tasks and interact and relate

6  with others.  Plaintiff argues that the ALJ rejected Ms. Chanterie's opinion that Plaintiff had a

7  very serious problem completing class work and that her grades were declining and she had

8  decreased motivation.  The ALJ specifically discussed Ms. Chanterie's testimony in finding that

9  Plaintiff has no limitations in acquiring and using information as a result her ADHD.  (AR 32.)

10  The ALJ considered the June 4, 2015 teacher questionnaire completed by Ms. Chanterie.

11        On June 4, 2015, Ms. Chanterie submitted a teacher questionnaire in which she
12  reported she had known the claimant since August 12, 2014, Monday through
    Friday for English, reading, math, science, and social studies.  She reported the
13  claimant was in fifth grade, reading at a 4.9 grade level.  Her math grade was C
    [AR 314].  She opined the claimant had no problems observed in the domain of
14  acquiring and using information [AR 315].

15  (AR 32.)

16        The ALJ also considered the teacher questionnaire in finding that Plaintiff had a less than

17  marked limitation in attending and completing tasks as a result of her ADHD.

18        On June 4, 2015, Ms. Chanterie reported in the domain of Attending and
    Completing Tasks, that when the claimant was not on her medication she could be
19  very disruptive to others.  She reported that recently she had seen the claimant
    very tired with no motivation to complete class work or homework.  She
20  identified a "very serious problem" with the claimant completing class/homework
    assignments daily, and an obvious problem with organizing her own things like
21  school materials, and working without distracting herself and others monthly.
    She reported the claimant had a slight problem focusing long enough to finish
22  assigned activities or tasks, refocusing to task when necessary, and changing from
    one activity to another without being disruptive [AR 316].  Despite the "very
23  serious problem" noted by the teacher, the narrative described the claimant as
    medication improved and also noted a recent fluctuation in energy and
24  motivation.  The claimant's previous teacher Mrs. Dorado reported on June 6,
    2014 that at home the claimant was a good helper and mostly got along with her
25  siblings.  In class, she was very attentive, liked to please her teacher, and her
    grades were great.  She reported the claimant was a good multitasker, and was
26  only noticeably excitable when she was not on her medications.  She reported the
    claimant was earning straight A's and loved to write and do extra credit in the
27  classroom [AR 634-637].  In a June 8, 2017 student progress transcript the
    claimant achieved grades A's and B's in all subjects except for science and math

28

1    [AR 523].[3]  As such less than marked rating is supported.

2    (AR 34.)

3        The ALJ considered that Ms. Chanterie stated that Plaintiff was improved when she was

4    on medication and that she described a recent fluctuation in energy and motivation.  But she also

5    noted the prior teacher's report and that Plaintiff was still maintaining good grades.  The ALJ did

6    not reject Ms. Chanterie's opinion but considered it in the totality of the record.  The ALJ

7    properly considered and incorporated the opinion of Ms. Chanterie and her interpretation of the

8    evidence is rational.  Plaintiff disagrees with the finding that she was less than marked in this

9    area, but where the evidence is subject of more than one rational interpretation, the decision will

10   be upheld.  Burch, 400 F.3d at 679; Andrews v. Shalala, 53 F.3d 1035, 1039–40 (9th Cir. 1995)

11   (The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and

12   for resolving ambiguities.   Where the evidence is susceptible to more than one rational

13   interpretation the Commissioner's decision will be upheld).[4]

14        2.    Mr. Gonzales

15       Plaintiff argues that the ALJ failed to provide adequate reasons to reject the testimony of

16   Mr. Gonzales.   But the ALJ noted multiple instances where Mr. Gonzales's testimony was

17   inconsistent with the record, as well as a specific incident where he was untruthful about giving

18

19   [3] In the transcript cited, Plaintiff was receiving a C on her semester reports.  Her fourth quarter grades were As and
20   Bs in all classes, other than a C- in math.

     [4] Plaintiff argues that the ALJ did not address Ms. Chanterie's opinion that Plaintiff had four episodes during the
21   school year and that other kids shied away from her.  However, Plaintiff has not developed this argument.  Further,
     the ALJ did address the four episodes and that they were when Plaintiff was not on her medication.  Additionally,
22   Ms. Chanterie reported that Plaintiff "has a consistent group of friends, but I noticed that most of the kids stay away
     from her because when she is not on medication, she is very bothersome to them and they do not like that."  (AR
23   322.)

24   In the domain of interacting and relating with others, the Commissioner considers how well the claimant initiates
     and sustains emotional connections with others, develops and uses the language of your community, cooperates with
25   others, complies with rules, responds to criticism, and respects and takes care of the possessions of others.  20
     C.F.R. § 416.926a(i).  Plaintiff does not set forth any argument explaining how Ms. Chanterie's opinion would
26   contradict the ALJ's finding that Plaintiff had a less than marked limitation in reacting and relating with others,
     especially given the fact that Ms. Chanterie stated that Plaintiff "is a very pleasant student who is always willing to
27   lend a helping hand. . . . [H]as a consistent group of friends.   I cannot say that I have had many problems with
     Jasmine this year, because l haven't.  She was an absolute pleasure to have in class." (AR 322.)  As well as the other
28   statements from her teachers which the ALJ considered demonstrating that Plaintiff liked to please her teachers (AR
     381); was helpful in the classroom (AR 371); and was generally doing well in school.

1  Plaintiff her medication.

2          The ALJ considered the November 5, 2014 function report (AR 277-286); November 24,

3  2014 Questionnaire for Children Claiming SSI Benefits (AR 287-294); February 23, 2016

4  Questionnaire for Children Claiming SSI Benefits (AR 327-334); February 2016 letter (AR 323-

5  326); and March 30, 2016 Disability Report - Appeal (AR 344-351); in addition to specific

6  statements made by Mr. Gonzales in the opinion.  (AR 27-28.)

7          The ALJ noted that on February 23, 2016, Mr. Gonzalez reported that Plaintiff was

8  engaged in mental health therapy sessions weekly (AR 328, 329, 330), but the medical evidence

9  showed that she was not in therapy with Madera County Behavioral Health from 2009 to 2015

10  (AR 725-726) and that since that time she had attended only two evaluations, a year apart, and

11  each time she was administratively discharged for failing to show up for appointments and not

12  responding to written correspondence, (AR 28-29, 1047-1078).

13          The ALJ also noted that her father had reported to the mental health workers that she was

14  suspended from school but the evidence in the record does not show that she has ever been

15  suspended.  (AR 314, 322, 368, 381, 394, 452, 465, 477, 491, 505, 537, 634, 646, 835, 853,

16  1085.)  The ALJ noted that Plaintiff told Dr. Portnoff that Plaintiff was hyperactive, impulsive,

17  distractible, defiant, aggressive, and that she has pushed teachers and broken a school computer.

18  (AR 29, 1085.)  But the ALJ noted that the educational records do not corroborate such claims.

19  (AR 29.)  Her father also reported that she was depressed with low self-esteem, has said she

20  wants to die, has social anxiety, and had daily rages that last three hours or more.  (AR 29, 1085.)

21  The ALJ noted that neither the educational records nor the medical records contain complaints of

22  three hour rages.  (AR 29.)  As discussed above substantial evidence supports the ALJ's finding

23  that these statements are not supported in the record.

24          The ALJ considered that on March 15, 2017, school personnel noted that Plaintiff was

25  having outbursts in class and had gone to the nurse's office to cool down and talk.  (AR 26, 450.)

26  Plaintiff reported that she was out of her medications.  (AR 26, 450.)  The school nurse was

27  informed by Plaintiff's physician's office that the last refill on Plaintiff's medication had been a

28  thirty day supply prescribed on February 6, 2017.  (AR 26, 450.)  When Plaintiff's father was

1  contacted he stated, "Don't let her play you, she took her medication this morning."  (AR 26,

2  450.)  When he was informed of the information provided by the doctor's office, he said he was

3  trying to get a ride to the doctor.  (AR 26, 450.)

4        The ALJ found that Mr. Gonzales's statements were not consistent with the observations

5  of the teachers and the documented attendance records.  The ALJ provided germane reasons to

6  reject the testimony of Mr. Gonzales.  The ALJ did consider Mr. Gonzales's statements in

7  discussing the domains.

8        The ALJ considered that on September 12, 2016 during a mental health assessment of

9  Plaintiff her parents had reported that she was suspended that year for fighting and was engaged

10  in frequent anger outbursts, had difficulty concentrating and following directions, was engaged

11  in frequent conflicts with her siblings, had declining grades, and CPS was involved.  (AR 32-33,

12  847.)

13        On August 9, 2017, her father reported that Plaintiff had exhibited hyperactivity and

14  aggression throughout her life, her moods changed quickly, she was manipulative, not

15  remorseful, barely passing her classes, had a history of suspensions from school, was aggressive

16  with her siblings, had a history of running away from home, daily violent outbursts, and that she

17  kicks doors, throws things, and is aggressive with her siblings when she is angry.  (AR 33, 851,

18  853.)  Plaintiff reported that she had been referred to CPS because her father had given her the

19  wrong medication when her medication ran out.  (AR 33, 36, 853.)

20        The ALJ considered that on May 8, 2015, her father reported that Plaintiff was very

21  aggressive and threw knives.  (AR 35, 817.)  On December 22, 2015, Plaintiff's parents reported

22  that she had been suspended from school for fighting and the educational records do not support

23  this allegation.   (AR 35, 835.)   They reported that her mood changes quickly, she is

24  manipulative, not remorseful, failing her classes, has been expelled from the afterschool

25  program, is aggressive with siblings, runs away from home and has daily outbursts which include

26  kicking doors and putting holes in the wall, struggles to make friends and care for herself.  (AR

27  35-36, 835.)

28        The ALJ also noted that Plaintiff saw her treating physician approximately monthly for

refills on her psychotropic medication and occasional episodes of head lice where her providers noted that she did well on her medications, other than some occasions where her father reported that they were not working and he requested a change in medication or an increase in the dose. (AR 39.)

The ALJ did not err in discounting Mr. Gonzales's testimony because she provided reasons that were germane to his testimony in finding he was not credible.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in evaluating the opinion of Dr. Portnoff or the testimony of the lay witnesses.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Jasmine Monique Gonzales. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   __September 3, 2020__

__UNITED STATES MAGISTRATE JUDGE__